1
2
3
4
5
6
7                       UNITED STATES DISTRICT COURT

8                    SOUTHERN DISTRICT OF CALIFORNIA

9

10   MARKEITH CLINTON,                    Case No.:  3:23-cv-01471-CAB-SBC
     CDCR #AY-1315,
11                                        **SCREENING ORDER RE FIRST**
                              Plaintiff,  **AMENDED COMPLAINT**
12
     vs.
13                                        **1)  DISMISSING DEFENDANTS**
     KATHLEEN ALLISON, Secretary of       **ALLISON, MADDEN, BUCKEL,**
14   CDCR; RAY MADDEN, Warden;            **STEADMAN, FERNANDEZ AND**
     R. BUCKEL, Chief Deputy Warden;      **DOE 1–10 AS PARTIES**
15   S. STEADMAN, Associate Warden;
     C. ALLEN, Sergeant; COLON, Officer;  **2)  DISMISSING SPECIFIED**
16   A. FERNANDEZ, Officer; DOE 1–10;     **CAUSES OF ACTION FOR FAILING**
     JOHN DOE 1–3; JANE DOE 4,            **TO STATE A CLAIM PURSUANT**
17                                        **TO 28 U.S.C. §§ 1915(e)(2)**
                             Defendants.  **AND 1915A(b)**
18
19                                        **AND**
20
21                                        **3)  DIRECTING U.S. MARSHAL**
                                          **TO EFFECT SERVICE UPON**
22                                        **DEFENDANTS ALLEN AND**
23                                        **COLON PURSUANT TO**
                                          **28 U.S.C. § 1915(d) AND**
24                                        **Fed. R. Civ. P. 4(c)(3)**
25
26
27        Before the Court is Plaintiff Markeith Clinton's First Amended Complaint ("FAC"),

28   which requires *sua sponte* screening because he is prisoner seeking relief from government

                                        1

officials and proceeding *in forma pauperis* ("IFP").  (*See* ECF No. 9.)  The Court finds Plaintiff's FAC alleges plausible Eighth Amendment and conspiracy violations as to some Defendants, but fails to state any other viable claim for relief upon which section 1983 relief can be granted.  Therefore, for the reasons explained more fully below, the Court **DISMISSES** Defendants Allison, Madden, Buckel, Steadman, Fernandez, and Doe 1–10 as parties pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), **DIRECTS** the Clerk to issue a summons upon Defendants Allen and Colon, and **ORDERS** the U.S. Marshal to effect service of process upon Allen and Colon pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3).

## LEGAL STANDARD

Because Plaintiff is a prisoner and is proceeding IFP, his FAC, like his original Complaint, requires a preliminary screening which the Court conducts *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).  Under these statutes, the Court must dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'"  *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

/ / /

Federal Rules of Civil Procedure 8(a) and 12(b)(6) together require complaints to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And while the court "ha[s] an obligation where the petitioner is pro se, particularly in a civil rights case, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

## I.   Factual Allegations

As he did in his original Complaint, Plaintiff alleges he is a disabled General Population ("GP") prisoner who uses a wheelchair, and housed in Richard J. Donovan Correctional Facility's ("RJD") "B" Facility. (*See* FAC at 6 ¶ 30.) On November 29, 2021, Plaintiff had a medical appointment requiring an escort to a holding cell near the Treatment and Triage Area ("TTA"), and across a plaza accessible to other higher security level inmates. (*Id.* ¶¶ 30–33.) Plaintiff claims an unidentified Security & Escort ("S&E") officer announced there was a "General Population Inmate Walking" prior to his entry into the plaza, which according to RJD security policy, requires the movement of prisoners from Facilities A, C, and D to stop. (*Id.* at 7 ¶ 34.) Once the S&E officer received notice all was clear, Plaintiff was escorted to a TTA holding cell with a large "B" on the door. (*Id.* ¶ 35.)

While he waited in his wheelchair for his medical appointment, Plaintiff alleges Defendant S&E Officer John Doe 1 placed an able-bodied "SNY" prisoner in the holding cell with him without first making a verbal announcement as to the able-bodied prisoner's

housing facility. (*Id.* at 7, 14 ¶¶ 36, 80; *see also* Ex. A, ECF No. 9-1 at 7.)[1]  After the other prisoner learned Plaintiff was a General Population B Yard inmate, Plaintiff alleges he "attacked" him in his wheelchair for 15–30 seconds, until keys were heard, S&E Officer John Doe 1 re-opened the holding cell door, and permitted the able-bodied SNY prisoner to step out, again without first announcing that prisoner's housing designation. (*Id.* at 7–8, 14 ¶¶ 37–39, 80.)  Plaintiff next claims that at approximately 11 a.m., John Doe 1 inquired about Plaintiff's medication, and Plaintiff replied that he needed "life-sustaining" insulin. (*Id.* at 8, 9 ¶¶ 40, 50.)  Doe 1 then announced "B Yard" walking," and proceeded to push Plaintiff in his wheelchair out of the holding cell, and back toward B Facility. (*Id.* at 8, 9 ¶¶ 40–41, 50.)

As he was being escorted by John Doe 1, however, Plaintiff alleges Defendant S&E Officer John Doe 2 approached, asked Doe 1 to "hold up," and gave him a "high 5." (*Id.* at 8 ¶¶ 42–43.)  Plaintiff next claims when he looked over his shoulder to see who was pushing his chair, he realized it was not Officer Doe 1, but instead the SNY inmate who had just attacked him in the holding cell. (*Id.* ¶¶ 43–45.)  "Without any provocation," Plaintiff contends this inmate struck him in the back of the head and neck and "challeng[ed] [him] to fight," so he "fled [his] wheelchair for fear of [his] safety." (*Id.* at 8–9 ¶¶ 44–45; *see also* Ex. A, ECF No. 9-1 at 7.)  Officer John Doe 2 then ordered the able-bodied inmate to "break it up" and escorted Plaintiff's attacker to his housing facility on "D" Yard. (FAC at 9 ¶ 46.)

When Plaintiff later was returned to a TTA holding cell, he requested to speak with Defendant C. Allen, a Correctional Sergeant assigned to the TTA as the "Security Post Supervisor." (*Id.* at 2, 9 ¶¶ 5, 47.)  When Allen arrived, Plaintiff informed her he had been

---

[1]  General Population inmates are "those inmates who d[o] not have any specific risk factors, or who [a]re able to program without specific security accommodations." *Prado v. Gastelo*, No. 2:21-CV-05057-JAK-JC, 2024 WL 873560, at *2 n.3 (C.D. Cal. Jan. 24, 2024), *report and recommendation adopted*, No. 2:21-CV-05057-JAK-JC, 2024 WL 868163 (C.D. Cal. Feb. 28, 2024).  Sensitive Needs Yard or "SNY" inmates are "those who ha[ve] specific case factors that could potentially lead to a risk of violence[.]" *Id.*

attacked twice by an able-bodied SNY inmate while being escorted by her subordinate S&E Officers John Does 1 and 2. (*Id.* at 9–10 ¶¶ 48–51.) Plaintiff further reported pain in the back of his head, neck, and "especially in his leg." (*Id.* at 10 ¶ 52.) Allen "acted as if not to believe [him]," but before she left Plaintiff suggested she check the TTA's "court-ordered cameras," and the "mand[a]tory body cameras worn by her subordinates."[2] (*Id.* ¶ 53.)

Approximately 30 minutes later, Plaintiff claims he stopped Defendant Jane Doe 4, another S&E Officer assigned to the TTA, as she walked past his holding cell door. (*Id.* at 5, 10 ¶¶ 25–26, 54.) Plaintiff claims he asked Jane Doe 4 about his x-ray appointment, and requested to "see a Lieutenant or Investigative Service Unit ("ISU") Officer." (*Id.* ¶ 54.) Defendant Colon, another S&E Officer assigned to the TTA, then "called Defendant Jane Doe 4 off the holding cell door." (*Id.* at 3, 10 ¶¶ 9–10, 55.) Plaintiff alleges Doe 4 then joined Colon, and John Does 1–3 at a podium where he overheard Colon state to his fellow officers that Allen had "issued an order/command" to her subordinates to "ignore" Plaintiff's request to speak to a Lieutenant or ISU Officer, to "stand in solidarity," and that "the Sgt. wanted them to not say anything." (*Id.* at 10–11 ¶¶ 55–56.)

When Plaintiff was "finally seen for x-ray" at approximately 1:30 p.m., he told the technician he had been attacked twice, and that his leg was painful and swollen. (*Id.* at 11 ¶¶ 59–60.) The technician consulted with a doctor and a registered nurse ("RN") in the TTA and was advised to complete a CDCR Form 7219 documenting Plaintiff's injuries.[3] (*Id.* at 11, 12 ¶¶ 61, 63.) At some point after the RN completed the Form 7219, Sgt. Allen arrived, and spoke with the RN. Plaintiff "could not hear what was being said," but he alleges Allen took the Form 7219 from the RN. (*Id.* at 12 ¶ 64.) After an x-ray revealed

---

[2] The Court presumes Plaintiff is referring to an injunctive relief order issued to enforce the Remedial Plan in the *Armstrong* class action requiring the "install[ation of] fixed surveillance cameras and body-worn cameras" at RJD. *See Armstrong v. Newsom*, 58 F.4th 1283, 1291 (9th Cir. 2023).

[3] "The CDCR Form 7219 is a form completed by a nurse or other prison medical staffer who examines an inmate after an incident." *Anglin v. Pratti*, 643 F. Supp. 3d 1077, 1084 n.1 (E.D. Cal. 2022).

Plaintiff's leg was broken, he was told he required transport to an outside hospital for treatment due to his diabetes.  (*Id.* ¶¶ 62, 65.)  Plaintiff contends he waited six hours before being transported to Alvarado Hospital.  (*Id.* ¶ 66.)

## II.  Parties

The Court first notes Plaintiff's FAC seeks to sue the following Defendants in their individual capacities:  Sgt. C. Allen, Officer Colon, John Doe 1–3, and Jane Doe 4.  (*See* FAC at 1–6 ¶¶ 5–28.)  Unlike his original pleading, Plaintiff's FAC no longer seeks relief against Defendants Allison, Madden, Buckel, Steadman, Fernandez, or the group of persons previously labeled and listed in the docket as Doe 1–10.  Therefore, the Court **DISMISSES** these Defendants as parties to this action based on Plaintiff's failure to state any claim for relief against them pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

## III.  Analysis

### A.   42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights."  *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted).  "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law."  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

/ / /

As to Defendants Allen, Colon, and all four Does, Plaintiff's FAC sufficiently alleges they are peace officers employed by the California Department of Corrections and Rehabilitation ("CDCR") who acted or failed to "adhere to and [en]force state law." (*See* FAC at 2-6 ¶¶ 7, 11, 15, 19, 23). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988). Therefore, the Court next considers whether Plaintiff's FAC alleges facts sufficient to show that each of these Defendants deprived him of a federal statutory or constitutional right. *Tsao*, 698 F.3d at 1138.

In conducting this analysis, the Court begins by noting Plaintiff divides his FAC into four causes of action, but under each caption heading alleges violations of multiple federal constitutional provisions, state and federal penal code sections, and various administrative regulations. (*Id.* at 13–18 ¶¶ 71–98.) Because the underlying facts supporting all his potential claims overlap but the bases of potential liability under § 1983 as he presents them are conflated, the Court re-categorizes each of Plaintiff's purported claims for relief as set forth below for purposes of clarity and to better organize its screening analysis.

### B.   Failure to Protect Claims

First, Plaintiff alleges Sgt. Allen, Officer Colon, John Does 1–3 and Jane Doe 4 all violated his "right to be free of and or protected from assault" in violation of the Eighth and Fourteenth Amendments.[4] (*See* FAC at 14, 16, 18 ¶¶ 76, 90–91, 98.)

/ / /

---

[4] The Court notes Plaintiff claims Defendants' failure to protect him from assault on November 29, 2021 violated both the Eighth Amendment's prohibition of cruel and unusual punishment as well as his right to due process of law in violation of the Fourteenth Amendment. (*See* FAC at 14 ¶¶ 76–80; FAC at 16–17 ¶¶ 90–92.) However, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)); *see also Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (same). "Claims of excessive force, physical assault, and failure to protect are covered by the Eighth Amendment, and therefore fail to state a cognizable due process claim." *Witczak v. Lozano*, No. 20-CV-01566-HSG, 2021 WL 2115424, at *5 (N.D. Cal. May 25, 2021).

"The Eighth Amendment requires prison officials to protect inmates from violence." *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). In order to state a plausible Eighth Amendment claim for relief, however, a Plaintiff must allege facts sufficient to show that Defendants acted with "deliberate indifference." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016); *Iqbal*, 556 U.S. at 678. "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro*, 833 F.3d at 1076). Deliberate indifference is "something more than mere negligence" but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official's deliberate indifference may be established through an "inference from circumstantial evidence" or "from the very fact that the risk was obvious." *Id.* at 842; *see also Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015).

In its previous screening Order, the Court *sua sponte* dismissed Plaintiff's Eighth Amendment claims because he alleged only that he was assaulted twice on November 29, 2021, and claimed the then-named Defendants as a group failed to prevent that attack.[5] (*See* ECF No. 6 at 8.) The Court finds Plaintiff's FAC now alleges facts sufficient to meet the "low threshold" required to state a plausible Eighth Amendment claims for relief against S&E Officers John Doe 1 and 2. *See* 28 U.S.C. § 1915(e)(2) and § 1915A(b); *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678. It fails, however, to state a plausible Eighth Amendment failure to protect claim with respect to Sgt. Allen, Officer Colon, John Doe 3, or Jane Doe 4.

/ / /

---

[5]   As noted above, Plaintiff no longer names most of the Defendants included in his original Complaint as parties to his FAC.

Specifically, Plaintiff claims he is disabled, confined to a wheelchair, and as a Facility B general population inmate, RJD security policy and procedure protocols require his separate housing, guided escort across a plaza accessible to "multi-security level prisoners," and secured placement in a housing-specific holding cell during transport to medical appointments in the TTA.  (*See* FAC at 6–7 ¶¶ 30–34.)  Plaintiff claims S&E Officers are required to announce the presence and housing designation of inmates requiring medical transport across RJD's plaza so that "all other movements of prisoners from A, C, and D Facilities are stopped to prevent violence," (*id.* at 7 ¶ 34), but John Doe 1 nevertheless "made no verbal announcement" as to his able-bodied attacker's housing designation before placing him into Plaintiff's holding cell.  (*Id.* at 7, 14 ¶¶ 36, 79–80.) Plaintiff further alleges Doe 1 made no announcement before "let[ting] said able-bodied attacker out," and before pushing Plaintiff's wheelchair out of the holding cell and back toward Facility B where the same inmate attacked him a second time.  (*Id.* at 8–9, 17 ¶¶ 43–45, 91.)  *See United States v. Williams*, 842 F.3d 1143, 1153 (9th Cir. 2016) (noting that the Eighth Amendment "requires that prison officials 'must take reasonable measures to guarantee the safety of the inmates.'").  As to John Doe 2, Plaintiff alleges he "high-fived" Doe 1 before joining in the escort back to Facility B, and observed and failed to protect him from a second attack by the same SNY prisoner from behind.  (*Id.* at 8 ¶¶ 42–46.)  "[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene" to protect their safety.  *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995).

These factual allegations, presumed true, are sufficient to support plausible Eighth Amendment failure to protect claims as to S&E Officers John Does 1 and 2.  *Cf. Cortez,* 776 F.3d at 1050–53 (finding potential Eighth Amendment violation where prison officials allegedly failed to follow policy requiring leg restraints during escort of a protective custody inmate across the "no man's land" of a detention unit housing a "volatile mix of prisoners"); *Farmer,* 511 U.S. at 842 (deliberate indifference may be established if Plaintiff had allege facts sufficient to "infer[ ] from circumstantial evidence" that "the risk was obvious,"); *Lolli v. County of Orange,* 351 F.3d 410, 421 (9th Cir. 2003) ("Much like

recklessness in criminal law, deliberate indifference . . . may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm.").

To the extent Plaintiff seeks to hold Sgt. Allen, Officer Colon, John Doe 3, or Jane Doe 4 individually liable for his attacks, however, he fails to state a plausible Eighth Amendment claim for relief. Specifically, Plaintiff alleges only that he informed Sgt. Allen, the TTA Security Post Supervisor, that he had been physically assaulted twice as a result of John Doe 1 and 2's breaches of safety protocol, but only *after* the incidents had already occurred. (*See* FAC at 9–10 ¶¶ 47–53.) Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011). Plaintiff alleges no facts to suggest Sgt. Allen knew John Does 1 and 2 would fail to adhere to safety protocol during his escort, directed them to ignore protocol, or consciously disregarded any excessive risk to Plaintiff's safety *before* he was attacked. *See Taylor*, 880 F.2d at 1045; *Starr*, 652 F.3d at 1205–06; *Farmer*, 511 U.S. at 837. The same is true for Officers Colon, John Doe 3, and Jane Doe 4, all of whom are only alleged to have either ignored or refused Plaintiff's requests to speak to a Lieutenant or ISU Officer *after* he had already been injured. (*See* FAC at 10–11 ¶¶ 54–58.)

For these reasons, the Court dismisses Plaintiff's Eighth Amendment failure to protect claims as to all Defendants except S&E Officers John Doe 1 and 2 pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### C.   Conspiracy Claims

Second, Plaintiff claims Defendants Allen, Colon, and all four Does "conspir[ed] to commit [a] felonious assault and battery on [his] person," by twice "us[ing] as prisoner from a different … facility to do their 'dirty work,'" collectively refusing his requests to report the attacks to a Lieutenant or ISU Officer soon after he was assaulted, *see* FAC at 10–11, 14–16 ¶¶ 54–58, 77, 83, 85, 87, and by "tak[ing] steps to 'conceal and suppress'"

both the serious nature of his leg injury and the identities of the officers involved.  (*Id.* at 16 ¶ 88.)

"Conspiracy is not itself a constitutional tort under § 1983," and it "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." *Lacey*, 693 F.3d at 935; *Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1147 (N.D. Cal. 2015).  Thus, to establish a conspiracy to violate one's rights under § 1983, a plaintiff must plead facts to plausibly show:  "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement."  *See Avalos v. Bacca*, 596 F.3d 583, 592 (9th Cir. 2010).

Conclusory allegations of conspiracy are not sufficient.  *See Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989).  Instead, Plaintiff must point to "specific facts to support the existence of the claimed conspiracy" including "an express or implied agreement" or a "meeting of the minds" among the defendants to deprive him of a constitutional right.  *Id.*; *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989).  But because "[d]irect evidence of improper motive or an agreement . . . will only rarely be available[,] … it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action." *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir.1999).  Thus, "an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Id.* at 1301.  And while "each participant in the conspiracy need not know the exact details of the plan, […] each participant must at least share the common objective of the conspiracy.'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (quoting *United Steel Workers of Am. v. Phelps Dodge Corp*., 865 F.2d 1539, 1541 (9th Cir. 1989)).

Here, Plaintiff claims he personally reported to Sgt. Allen he had been physically assaulted twice by a SNY inmate from another yard due to her subordinate Officer John Doe 1 and 2's alleged lapses in escort safety protocol, and asked her to confirm by checking the "court-ordered cameras of [the] TTA plaza," as well as Doe 1 & 2's body cameras.

(*See* FAC at 9–10 ¶¶ 48–53.)  Thirty minutes later, Plaintiff claims he asked Jane Doe 4 if he could speak to a Lieutenant or an ISU Officer, but Officer Colon called Jane Doe 4 away, and she joined Colon, and Does 1–3 at a nearby podium where Plaintiff alleges he overheard Colon instruct all four Does to "stand in solidarity," and to "ignore" Plaintiff's request to speak with a Lieutenant or ISU Officer because the "Sgt. wanted them not to say anything." (*See* FAC at 10–11, 16 ¶¶ 55–58, 87.)

The Court finds these allegations sufficient to plausibly show an express "meeting of the minds" between Sgt. Allen, Officer Colon, John Does 1–3 , and Jane Doe 4 to deprive Plaintiff of his Eighth Amendment right to protection from known and substantial risks of harm at the hands of his fellow prisoners.  *See Wilk*, 956 F.3d at 1147; *Farmer*, 511 U.S. at 833; *Lacey*, 693 F.3d at 935.  While Plaintiff does not allege all these Defendants were physically present when he was attacked, it is reasonable to infer from the conversations and other actions that allegedly followed, including Plaintiff's repeated requests to speak with a Lieutenant or ISU Officer after the attacks, and Sgt. Allen's alleged interception of the Form 7219 reporting his injuries after Plaintiff reported them to the x-ray technician and RN, that these parties all "shared the common objective" and engaged in a "joint action" to either facilitate or conceal any individual liability for his assaults.  *See Mendocino Environmental Center*, 192 F.3d at 1302; *Franklin*, 312 F.3d at 441.

For these reasons, the Court finds Plaintiff's conspiracy allegations involving Defendants Allen, Colon, John Does 1–3, and Jane Doe 4 are not merely conclusory, and instead are sufficient to survive the "low threshold" set for preliminary screening as required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b).  *See Wilhelm*, 680 F.3d at 1123.

D.    ADA & Equal Protection Claims

Third, Plaintiff alleges all Defendants denied him equal protection, and discriminated against him as a disabled person protected by the Americans with Disabilities Act ("ADA").  (*See* FAC at 15, 18 ¶¶ 83–84, 98.)

Title II of the ADA, 42 U.S.C. § 12102, prohibits discrimination on the basis of disability.  *Lowell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).  The ADA provides

that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity."  42 U.S.C. § 12132.  Title II applies to inmates within state prisons.  *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998); *see also Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997).  In order to state a claim under the ADA, however, Plaintiff must have been "improperly excluded from participation in, and denied the benefits of, a prison service, program, or activity on the basis of his physical handicap." *Armstrong*, 124 F.3d at 1023.

Here, Plaintiff fails to state a claim under the ADA because he does not allege to have been excluded from participating in, or denied any benefit of any prison service, program or activity due to his disability. *Id.*; *see also Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008).  Moreover, his FAC seeks declaratory and monetary damages against all Defendants in their individual capacities.  (*See* FAC at 3–6 ¶¶ 8, 12, 16, 20, 24, 28.)  "[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA[.]"  *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

Plaintiff's conclusory claims of discrimination and violations of his right to equal protection under the Fourteenth Amendment also fail to state a plausible claim for relief.  (*See* FAC at 18 ¶ 98.)  The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted).  To state an equal protection claim, a plaintiff generally must "show that the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class."  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (citation and internal quotation marks omitted); *Sampson v. Cnty of Los Angeles*, 974 F.3d 1012, 1022 (9th Cir. 2020); *see also Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998) ("We have held that § 1983 claims based on Equal Protection violations

must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent.").

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1972); *SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook*, 528 U.S. at 564.

Plaintiff alleges only that he is disabled and a member of a "protective class of prisoners" as the result of three separate prisoner class actions pending against the CDCR.[6] (*See* FAC at 6, 14, 15 ¶¶ 30, 76, 84.) But "the disabled do not constitute a suspect class for equal protection purposes." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001). Moreover, Plaintiff fails to allege he was intentionally singled him out for disparate treatment by any Defendant *because* he is disabled. *Id.* (citing *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) ("*Feeney*")). "'Discriminatory purpose'. . . implies

---

[6] *Armstrong* is a civil action pending in the United States District Court for the Northern District of California which involves a "certified class of all present and future California state prison inmates and parolees with disabilities [who] sued California state officials in their official capacities, seeking injunctive relief for violations of the RA and the ADA in state prisons." *Armstrong v. Wilson*, 124 F.3d 1019, 1021 (9th Cir. 1997). "The *Coleman/Plata* actions are consolidated civil rights class actions pending in the United States District Court for the Eastern and Northern Districts of California." *Edelbacher v. Cal. Bd. of Parole Hearings*, No. 17-CV-04783-HSG (PR), 2017 WL 4340348, at *1 (N.D. Cal. Sept. 29, 2017). "The *Coleman* class action concerns the constitutional adequacy of the mental health care provided to CDCR inmates and involves the class of seriously mentally ill persons in California prisons. The *Plata* class action concerns the constitutional adequacy of CDCR's inmate medical health care and involves the class of state prisoners with serious medical conditions." *Id.*; *see also Patton v. Flores*, No. 3:19-CV-00659-WQH-LL, 2020 WL 4697978, at *2 n.3 (S.D. Cal. Aug. 13, 2020).

14

more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Feeney*, 442 U.S. at 279 (internal citation omitted); *see also Bryant v. Johnson*, No. 2:20-CV-03459-DMG-JC, 2023 WL 6216703, at *9 (C.D. Cal. Sept. 25, 2023) (dismissing prisoner's equal protection claims pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A where guards allegedly "enabl[ed] two inmates to enter and attack plaintiff" in his cell, but plaintiff failed to allege he was intentionally treated differently from others similarly situated).

For these reasons, the Court dismisses Plaintiff's purported ADA and Fourteenth Amendment equal protection claims as to all Defendants pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

E.   Retaliation Claims

Fourth, Plaintiff alleges Defendants retaliated against him due to the fact that he is a member of the *Armstrong* class action and "had filed several grievances and 602 appeals complaining about … staff misconduct and reprisals in the past."  (FAC at 17–18 ¶¶ 94–96.)

As the Court advised Plaintiff in its previous screening order, "[p]risoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."  *Watison*, 668 F.3d at 1114 (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)).  But "[w]ithin the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

Here, Plaintiff alleges he had engaged in protected conduct, *i.e.*, "filed several grievances and 602 appeals," and had "complain[ed] about several issues including staff

misconduct and reprisals in the past." (FAC at 17 ¶ 94.) He also contends the Warden and Chief Deputy Warden (both of whom are no longer named as parties), were "on notice" that the attorneys appointed to represent the *Armstrong* class had filed an injunction seeking to enjoin acts of retaliation against "disabled incarcerated people" in February 2020. (*Id.* at 17–18 ¶¶ 95–96.)

However, Plaintiff must allege facts sufficient to show that the exercise of his First Amendment right was the "substantial" or "motivating" factor behind Defendants' conduct. *Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). The mere fact that Plaintiff is one of many *Armstrong* class members, or that he allegedly engaged in protected activity on some unspecified occasions in the past, without more, is insufficient to show Defendants Allen, Colon, or any of the Does included in his FAC, were "actually aware" of his class action status, or that he had filed any grievances or staff complaints against them or involving them before he was assaulted.[7] *See Pratt v. Rowland*, 65 F.2d 802, 804, 808 (9th Cir. 1995) (reversing district court's issuance of preliminary injunction based on retaliation where officials involved in decision to transfer prisoner were not "actually aware" he had been interviewed by local Fox News affiliate claiming he was "framed by the FBI"); *see also Shepard v. Quillen*, 840 F.3d 686, 689 (9th Cir. 2016) ("[A] section 1983 plaintiff 'must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action.'") (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006).

"When the causation element of *Rhodes* is combined with the pleading requirements of *Iqbal*, it is apparent that to state a retaliation claim a prisoner must plead sufficient facts to make plausible a claim that the defendants' actions were motivated by a desire to retaliate for his exercise of a constitutional right, rather than by some other motive."

---

[7] Specifically, Plaintiff points only to CDCR 602 Health Care Log No. RJD-HC-22000413, but he filed that grievance on February 9, 2022—more than two months *after* the November 29, 2021 incident. (*See* FAC at 12–13 ¶¶ 67–68; *see also* Ex. A, ECF No. 9-1 at 7–9.)

*Yelenich v. Cate*, No. C 09–5073 PJH, 2011 WL 1100124, at *2 (N.D. Cal. Mar. 23, 2011); *see also Jones v. Speidell*, 2018 WL 2329247, at *3 (E.D. Cal. May 23, 2018) ("[M]ere allegations that Plaintiff engaged in protected activity, without knowledge resulting in animus by a Defendant, is insufficient to show that Plaintiff's protected activity was the motivating factor behind a Defendant's actions."), *report and recommendation adopted*, 2018 WL 6182746 (E.D. Cal. Nov. 27, 2018).

Because Plaintiff's FAC contains only conclusory allegations that Defendants Allen, Colon, John Does 1–3, and Jane Doe 4 were "attempting to deprive [him] of redress and subject[ed] him to retaliation," *see* FAC at 19 ¶ 98.B.2, but no further factual content to plausibly show a retaliatory motive based on any protected First Amendment conduct, the Court finds his retaliation claims are also subject to *sua sponte* dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

### F.   Inadequate Medical Care Claims

Fifth, Plaintiff alleges the 6-hour delay in transporting him to the hospital after he was assaulted constituted cruel and unusual punishment.  (FAC at 17 ¶ 92.)

Mere medical malpractice does not constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Instead, the Eighth Amendment is violated when prison officials demonstrate "deliberate indifference to serious medical needs."  *Id.* at 104; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002).  A prison official is deliberately indifferent to an inmate's serious medical needs if the official "knows of and disregards an excessive risk to inmate health."  *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) (en banc) (quoting *Farmer*, 511 U.S. at 837)).  "[A]n inadvertent failure to provide adequate medical care, differences of opinion in medical treatment, and harmless delays in treatment are not enough to sustain an Eighth Amendment claim." *Simmons v. Arnett*, 47 F.4th 927, 934 (9th Cir. 2022).  Thus, if a prisoner contends medical care was delayed, he must allege harm resulting from that delay. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Stewart v. Aranas*, 32 F.4th 1192, 1195 (9th Cir. 2022) (requiring a prisoner to demonstrate that any alleged delay in medical care led to further injury).

17

Here, even assuming the injuries Plaintiff alleges to have sustained as a result of the November 29, 2021 assault were objectively serious, he alleges no facts to suggest that any delay attributable to the Defendants caused him any further injury.  *See Stewart*, 32 F.4th at 1195; *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (requiring that any treatment delays cause harm).  The mere fact that Plaintiff had to "wait … 6 hours" before being transported by a prison van from RJD to an outside hospital, *see* FAC at 12, 17 ¶¶ 66, 92, is insufficient by itself to support an Eighth Amendment violation.  *See Simmons*, 47 F.4th at 934.

Therefore, the Court also *sua sponte* dismisses Plaintiff's Eighth Amendment inadequate medical care claims pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).

### G.   Criminal and Administrative Law Claims

Finally, Plaintiff alleges Defendants' actions constituted a "hate crime" and in violation of several federal criminal statutes, California Penal Code provisions, Title 15 of the California Code of Regulations, and the CDCR's own policy directives as set forth in its *Operations Manual*.  (FAC at 13–14, 15 ¶¶ 73–74, 82–83.)

These allegations fails to state a claim and must be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2) and 1915A(b) because criminal statutes do not give rise to civil liability under section 1983.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  "[A] private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another."  *Linda R.S. v. Richard D*., 410 U.S. 614, 619 (1973); *see also Ellis v. City of San Diego*, 176 F.3d 1183, 1189 (9th Cir. 1999) ("[S]ections of the California Penal Code . . . do not create enforceable individual rights."); *Johnson v. Craft*, 673 F. Supp. 191, 193 (D. Miss. 1987) ("The decision to prosecute a particular crime is within the authority of the state, and there appears to be no federal constitutional right to have criminal wrongdoers brought to justice.").

Alleged violations of state administrative regulations, like those governing the CDCR as outlined in Title 15 of the California Code of Regulations or its *Operations Manual*, also do not give rise to any independent claim for relief under § 1983.  *See, e.g.,*

*Nible v. Fink*, 828 Fed. Appx. 463 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do not create private right of action); *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (violations of "CDCR operations manual" or other "state departmental regulations," without more, "do not establish a federal constitutional violation" (citations omitted); *Case v. Kitsap Cty. Sheriff's Dep't*, 249 F.3d 921, 930 (9th Cir. 2001) (violation of otherwise constitutional state statute, regulation, or internal prison policy does not establish liability under Section 1983 for deprivation of federal constitutional right (citations omitted)).   "All § 1983 claims must be premised on a constitutional violation." *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009).

### H.   Summary of Claims Surviving Screening

In sum, the Court finds only Plaintiff's Eighth Amendment failure to protect allegations involving John Does 1 and 2, and his conspiracy allegations involving Sgt. Allen, Officer Colon, John Does 1–3, and Jane Doe 4 "sufficient to warrant . . . an answer." *Wilhelm*, 680 F.3d at 1123.   But because Plaintiff's FAC identifies only Sgt. Allen and Colon by name, it will direct U.S. Marshal service upon these parties only at this time.[8] *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and

---

[8]   While the Court finds the Eighth Amendment allegations in Plaintiff's FAC involving John Doe 1 and 2 and the conspiracy allegations against John Doe 1–3 and Jane Doe 4 are sufficiently pleaded to survive initial screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), he must first identify these persons, submit an amended pleading and/or file a motion to substitute each Doe's true name, and request U.S. Marshal service upon each of these individuals as required by Federal Rule of Civil Procedure 4 before any claims alleged against them may proceed.   *See Aviles v. Village of Bedford Park*, 160 F.R.D. 565, 567 (1995) (Doe defendants must be identified and served within [90] days of the commencement of the action against them); Fed. R. Civ. P. 15(c)(1)(C) &  4(m).   Generally, Doe pleading is disfavored, *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), and in most instances it is impossible for the United States Marshal to serve a party identified only as a Doe.   *See Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (in order to properly effect service under Rule 4 in an IFP case, the plaintiff is required to "furnish the information necessary to identify the defendant."); *Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates*, 2018 WL 3580764, at *6 (D. Haw. July 25, 2018) (noting that "[a]s a practical matter, the United States Marshal cannot serve a summons and complaint on an anonymous defendant.").   However, where the identity of parties is not known prior to filing of an action, Ninth Circuit authority permits Plaintiff the opportunity to pursue appropriate discovery to identify unknown Does, unless it is clear that discovery would not uncover their identities, or his pleading requires dismissal for other reasons.   *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642).

perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

All remaining allegations in Plaintiff's FAC fail to state a claim upon which § 1983 can be granted, and are hereby **DISMISSED** *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## CONCLUSION

For the reasons discussed, the Court:

1)      **DISMISSES** Defendants Allison, Madden, Buckel, Steadman, Fernandez, and Doe 1–10 and **DIRECTS** the Clerk of the Court to terminate them as parties to this matter based on Plaintiff's failure to state a claim against them pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

2)      **DISMISSES** all claims and causes of action in Plaintiff's First Amended Complaint as alleged against Defendants C. Allen, Colon, John Doe 1–3, and Jane Doe 4 for failing to state a claim upon which § 1983 relief can be granted pursuant to  28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), *except* the Eighth Amendment failure to protect claims against John Doe 1 and 2, and the conspiracy allegations alleged against Defendants C. Allen, Colon, John Doe 1–3, and Jane Doe 4 as set forth in this Order.

3)      **DIRECTS** the Clerk to issue a summons as to Plaintiff's First Amended Complaint upon Defendants C. Allen and Officer Colon *only*, and forward it to him along with two blank U.S. Marshal Form 285s for Defendants Allen and Colon.  In addition, the Clerk will provide Plaintiff with a certified copy of this Order, its October 12, 2023 Order Granting IFP (ECF No. 6), certified copies of his First Amended Complaint (ECF No. 9), and the summons so that he may serve these two named Defendants.  Upon receipt of this "IFP Package," Plaintiff must complete the Form 285s as completely and accurately as possible, include an address where Defendants Allen and Colon may be found and/or subject to service, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

4)      **ORDERS** the U.S. Marshal to serve a copy of Plaintiff's First Amended Complaint and summons upon Defendants Allen and Colon at the addresses provided by Plaintiff on the USM Form 285s provided, and to file executed waivers of personal service upon both Defendants with the Clerk of Court as soon as possible after their return. Should Defendants fail to return the U.S. Marshal's requests for waiver of personal service within 90 days, the U.S. Marshal must instead file the completed Form USM 285 Process Receipt and Returns with the Clerk of Court, include the date the summons, Amended Complaint, and requests for waiver were mailed to each Defendant, and indicate why service remains unexecuted. All costs of service will be advanced by the United States; however, if any Defendant located within the United States fails without good cause to sign and return the waivers requested by the Marshal on Plaintiff's behalf, the Court will impose upon that Defendant any expenses later incurred in making personal service. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

5)      **ORDERS** Defendants Allen and Colon, once served, to reply to the claims found sufficient to survive screening in Plaintiff's First Amended Complaint, *and any subsequent pleading Plaintiff may file in this matter in which they are named as parties*, within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a) and 15(a)(3). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its *sua sponte* screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face of the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond); and

6)      **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the

manner in which a true and correct copy of that document has been was served on Defendants or their counsel, and the date of that service.  *See* S.D. Cal. CivLR 5.2.  Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon the Defendants, or their counsel, may be disregarded.

**IT IS SO ORDERED**.

Dated:  April 29, 2024

_____
Hon. Cathy Ann Bencivengo
United States District Judge

3:23-cv-01471-CAB-SBC